United States District Court
Southern District of Texas
**ENTERED**
January 03, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ERIC W. BIGGERS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:22-cv-02188** |
| **BP PRODUCTS NORTH AMERICA** | § | |
| **INC., BP AMERICA INC., AND INEOS** | § | |
| **STYROLUTION AMERICA, LLC.** | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM & ORDER

In a hearing held on December 15, 2023, the Court considered Defendant INEOS Styrolution America, LLC's ("INEOS") Motion to Exclude Plaintiff's Expert Testimony on Causation (ECF No. 86) and Motion for Summary Judgment (ECF No. 69). After considering parties' briefings and oral arguments, the Court **GRANTED** the Motion to Exclude, **GRANTED** the Motion for Summary Judgment as to Plaintiff's chronic symptoms, and **DENIED** the Motion for Summary Judgment as to Plaintiff's acute symptoms. The Court issues this Memorandum and Order in order to further document its reasoning.

### I.  BACKGROUND

In July 2020, Eric Biggers saw a cloud of smoke emanate from a chemical plant, and then rush towards him. Biggers Dep. 46:15–18, 45:15–19, ECF No. 86-3. He immediately began throwing up, gagging, and experiencing headaches. *Id.* at 45:22–24. He later reported suffering from depression and anxiety, red eyes, digestive issues, nerve injury in his hands, erectile dysfunction, breathing issues, development of lung nodules, and sleep apnea. *Id.* at 69:13–16, 71:13–24, 72:8–25, 88:12–17, 85:4. For purposes of this Memorandum and Order, the Court

assumes that Mr. Biggers' account of the incident is accurate and draws all reasonable inferences in his favor. *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Mr. Biggers filed suit against BP Products North America Inc., BP America Inc., and INEOS. He brought claims for negligence, gross negligence, res ipsa loquitor, and respondeat superior. Pl.'s Original Pet. 6–9, ECF No. 1-1. In July 2023, the Court granted Defendants BP Products North America Inc. and BP America Inc.'s Motion for Summary Judgment (ECF No. 71), leaving INEOS as the sole Defendant.

INEOS filed a Motion for Summary Judgment, arguing that Plaintiff had not offered expert testimony to establish causation, which is a requirement in toxic tort cases. *See Seaman v. Seacor Marine, L.L.C.*, 326 Fed. Appx. 721, 723 (5th Cir. 2009) (per curiam). In a hearing held on July 27, 2023, Plaintiff argued that proffered testimony from his treating physician and non-retained expert, Dr. Joseph Prince, fulfilled this requirement. INEOS disagreed and, upon the Court's invitation, filed a Motion to Exclude Dr. Prince's Testimony on Causation. Because INEOS's Motion for Summary Judgment is based entirely on the argument that Plaintiff has not put forth admissible expert testimony on causation, both motions depend upon the resolution of the Motion to Exclude.

As an initial matter, the Court must distinguish between Mr. Biggers' acute and chronic injuries. As explained above, Mr. Biggers alleges that he experienced nausea, vomiting, and headaches immediately following exposure. He also alleges that he suffered from a host of separate, chronic health problems in the weeks and months following the exposure. While toxic tort plaintiffs generally must provide expert testimony to establish causation, "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense

2

of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 470 (5th Cir. 2012) (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007)); *Lanier v. Lowe's Home Centers, LCC*, No. 6:18-CV-366-JCB, 2019 WL 10984431, at *6 (E.D. Tex. Oct. 22, 2019); *see also Ballard v. Bunge N. Am. Inc.*, 338 F. App'x 447, 448 (5th Cir. 2009) (Owen, J., concurring) (explaining that plaintiff's entire suit need not be dismissed because, while plaintiff did not put forth evidence that her chronic symptoms or illnesses were caused by exposure to phosphine gas, there was no indication that anything other than the exposure caused plaintiff's acute symptoms).

Here, Plaintiff's immediate reaction to the exposure presents a circumstance in which a layperson could reasonably evaluate causation without expert testimony. Therefore, INEOS is not entitled to summary judgment with respect to Plaintiff's acute injuries—namely, his vomiting, nausea, and headaches that immediately followed his exposure. On the other hand, in order for Plaintiff's claims relating to his chronic injuries to proceed, he must offer expert testimony as to causation. Consequently, the Court now turns to the admissibility of Dr. Prince's testimony.

## II.      INEOS's Motion to Exclude Plaintiff's Expert Testimony on Causation

INEOS argues that Dr. Prince's testimony should be excluded for two reasons: first, because Plaintiff did not comply with the disclosure requirements set forth in Federal Rule of Civil Procedure 26(a)(2)(C); second, because Plaintiff has not shown that Dr. Prince's testimony is admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

### A. Rule 26(a)(2)(C) Disclosures

The parties agree that Dr. Prince is a non-retained expert, meaning that Plaintiff was required to disclose "the subject matter on which [Dr. Prince] is expected to present evidence under

3

Federal Rule of Evidence 702, 203, 705" as well as "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). Plaintiff's disclosure was required to "state opinions, not merely topics of testimony." *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 3:14-CV-1028-D, 2017 WL 90366, at *2 (N.D. Tex. Jan. 10, 2017).

The scheduling order in this case required Plaintiff to identify expert witnesses no later than March 31, 2023. Prior to this deadline, Plaintiff disclosed his treating physicians and produced medical records for a span of approximately 12 years (2010 to 2023), along with a statement that these non-retained treating physicians "may provide opinions as to the causal nexus between the incident made the subject of this lawsuit and Plaintiff's claimed injuries." Pl.'s Rule 26(a)(2) Designation of Experts 1, ECF No. 53. Defendant argues that Plaintiff's designations are impermissibly vague, as they do not summarize any specific opinions the treating physicians may offer.

There is little binding precedent on Rule 26(a)(2)(C). The Court finds guidance from the Advisory Committee's admonition that courts should not require "undue detail" in Rule 26(a)(2)(C) disclosures, "keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." FED. R. CIV. P 26(a)(2)(C) advisory committee's note to 2010 amendment; *Everett Fin., Inc.*, 2017 WL 90366, at *2. Further, the Fifth Circuit has acknowledged that "[t]he basic purpose [of Rule 26] is to prevent prejudice and surprise." *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 Fed.Appx. 444, 446 (5th Cir. 2013) (quoting *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994)). Here, Defendant could—and, it appears, did—reasonably assume that Plaintiff's non-retained experts sought to provide opinions that Plaintiff's exposure to styrene caused his various health issues. Defendant's

retained experts authored reports refuting that very claim. Thus, Plaintiff's disclosures did not thwart Rule 26's goal of preventing prejudice and surprise.

The Court is hesitant to impose unnecessary hurdles before under-resourced litigants attempting to pursue their claims in federal court. The Court is keenly aware that requiring an inordinate level of detail in Rule 26(a)(2)(C) disclosures disproportionately impacts litigants who do not have the means to retain experts, and thus engage more frequently with unretained experts. The Court therefore finds and holds that Plaintiff complied with Rule 26(a)(2)(C)'s disclosure requirements when it disclosed Dr. Prince as a non-retained expert.

### B. Admissibility Under Federal Rule of Evidence 702 and *Daubert*

Apart from disclosure requirements, in order for Dr. Prince's testimony to be admissible, Plaintiff must establish that (1) Dr. Prince is qualified, (2) his proffered testimony is relevant to the suit, and (3) his testimony is reliable. *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). *Daubert* set forth the following four factors that courts should consider when determining whether an expert's methodology is reliable:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

509 U.S. at 593–94.

To assess reliability, then, the Court must be able to review information regarding Dr. Prince's theory and methods. Dr. Prince's testimony must "be grounded in the methods and procedures of science" and may not consist of "unsupported speculation or subjective belief." *Johnson*, 685 F.3d at 459 (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir.

1999)). To that end, INEOS points out that there is no evidence that Dr. Prince has considered any scientific studies to support his opinions, rendering any purported testimony unreliable under *Daubert*. In response, Plaintiff asserts that, in diagnosing him with toxic inhalation injury, "Dr. Prince consulted medical literature regarding Styrene's ability to cause pulmonary reactions in determining his unbiased diagnosis and opinion as to the cause of Plaintiff's toxic inhalation injury." Pl.'s Resp. 13, ECF No. 81. This position puts Plaintiff in a bind.

As noted above, the federal rules do not require non-retained experts like Dr. Prince to produce written reports. Fed. R. Civ. P. 26(a)(2)(B). However, district courts in this circuit agree that treating physicians *are* required to produce written reports where their opinions are "based on information learned outside the course of treatment," that is, information beyond the "personal knowledge obtained from examining and treating an individual." *Cooper v. Wal-Mart Transp., LLC*, No. CIV.A. H-08-0085, 2009 WL 290447, at *1 (S.D. Tex. Feb. 5, 2009); *see also Lee v. Valdez*, 2008 WL 4287730, at *3 (N.D. Tex. Sep. 18, 2008); *Boudreaia v. J.P. Morgan Chase & Co.*, 2007 WL 4162908, at *2 (E.D. La. Nov. 21, 2007); *Lowery v. Spa Crofters, Inc.*, 2004 WL 1824380, at *2 (W.D. Tex. Aug .16, 2004). By Plaintiff's own account, Dr. Prince's opinions on causation are based upon information beyond his personal knowledge obtained in the course of treatment; therefore, Dr. Prince was required to produce a written report. He did not do so. As a result, the Court must conclude that Dr. Price may not offer expert testimony on causation.[1] He may, however, testify as to information that is based upon personal knowledge obtained from his examination and treatment of Mr. Biggers. *See Cooper*, 2009 WL 290447, at *1.

---

[1] The parties also dispute whether Dr. Prince is qualified to provide expert testimony on causation. Because the Court concludes on separate bases that Dr. Prince may not provide expert testimony, it need not decide whether Dr. Prince is qualified.

This case points out two common challenges in toxic tort suits. First, plaintiffs typically must have the means to retain experts; as demonstrated by Mr. Biggers' situation, *Daubert*'s admissibility standards often present unsurmountable barriers where plaintiffs only put forth unretained experts. Second, those retained experts must be able to establish specific causation. Plaintiffs are frequently unable to clear these hurdles even before courts can assess whether their claims are meritorious. Experts are costly, and establishing specific causation in toxic tort cases is incredibly difficult. *See* Janet V. Siegel, *Negotiating for Environmental Justice: Turning Polluters into "Good Neighbors" Through Collaborative Bargainin*g, 10 N.Y.U. ENVTL. L.J. 147, 168 (2002).

Of course, there are sound reasons for requiring expert testimony on causation—which can involve quite technical analyses in toxic tort cases—and for carefully assessing the reliability of such testimony in order to keep "junk science" out of the courtroom. But it is worth reflecting upon precisely *who* these barriers may keep out of the courts. It has long been established that people of color are exposed to toxins at disproportionately high rates. *See, e.g.*, COMM'N FOR RACIAL JUSTICE, UNITED CHURCH OF CHRIST, TOXIC WASTES AND RACE IN THE UNITED STATES (1987), https://www.nrc.gov/docs/ML1310/ML13109A339.pdf; Robert D. Bullard et. al., *Toxic Wastes and Race at Twenty: Why Race Still Matters After All of These Years*, 38 ENVTL. L. 371 (2008). Thus, epistemological and doctrinal challenges in toxic tort suits will necessarily impact communities of color disproportionately. These inevitable distributional impacts deeply trouble the Court.

### III.     CONCLUSION

As this case stands today, Mr. Biggers has not offered admissible expert testimony to establish that styrene exposure caused his long-term injures. Accordingly, his chronic injury claims may not proceed to trial.

The Court **GRANTS** Defendant's Motion to Exclude, **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's chronic injuries, and **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's acute injuries.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas on this the 3rd day of January, 2024.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE